# DECLARATION of SEAN CUMMINGS

I, Sean Cummings, do hereby declare:

## BACKGROUND/EXPERIENCE

1. I am a Special Agent (SA) with the Drug Enforcement Administration (DEA) and have been since 1999. Prior to this, I was a Police Officer and Detective at the Eureka Police Department in Eureka, California. My current assignment is at the Eugene Resident Office in Oregon. My training and experience include completion of the DEA basic training academy. This training included the investigation, detection, and identification of controlled substances. I have consulted and conversed with several other agents and officers from various local, state, and federal agencies on various drug cases, including the distribution of heroin, cocaine, methamphetamine, marijuana and other controlled substances. As a result of this and my own experience and training, I am familiar with heroin, cocaine, methamphetamine, marijuana other controlled substances and the methods employed by traffickers of these narcotics.

## PURPOSE OF THIS DECLARATION

2. This declaration is submitted in support of a complaint *in rem* for forfeiture of the following items:

    a. A total of $1,158,870.00 in United States Currency (hereinafter referred to as **"Defendant Currency"**) and

    b. Property located at 37583 Row River Road, Dorena, Lane County, Oregon (hereinafter referred to as **"Defendant Real Property"**). generally described by Lane County as follows:

A tract of land situated at 37583 Row River Road, Dorena, Lane County, Oregon, more fully described as approximately 42.84-acre parcel that contains a large 50 foot by 300 Foot warehouse style building, a smaller office type building that was converted into a

residence, a large-covered parking structure with several bays, a small laundry, shower and bathroom building, and an old grown over unusable manufactured home. According to the Lane County real property tax statement the property is at Map and Tax Lots: 21-01-30-00-01602, and 21-01-30-00-01607 under account number 0929388 1416138 and is listed as owned by, N and J Investments LLC with a mailing address of 1498 E Main St Ste 103 Cottage Grove, Oregon 97424. (hereinafter "Subject Property").

The full legal description is as follows:

Commencing at a point on the Easterly side of Oregon, Pacific & Eastern Log Transfer Spur Track, which bears North 30° 20' West 573. 32 feet from inner angle Lorenzo Van Arburg Donation Land Claim No. 37 in Section 30, Township 21 South, Range 1 West, Willamette Meridian, which is the point of beginning of this description; thence South 56° 02' East 148.0 feet to a point on the southerly edge access road ditch shoulder; thence North 83° 43' East 534.0 feet to a point approximately 4 feet West of Westerly edge access road; thence South 35° 00' East 156.0 feet to a point approximately 4 feet West of Westerly edge access road; thence South 15° 12' East 476.0 feet to a point on Westerly shoulder road; thence South 07° 04' East 134.54 feet to a point on Westerly shoulder road; thence South 11° 47' West 305.20 feet to a point at the westerly edge of access road; thence South 26° 17 East 92.07 feet to a point at Westerly edge of access road; thence South 05° 13' East 146.75 feet to a point at Westerly edge of access road; thence South 23° 58' East 191.15 feet to a point at Westerly edge of access road; thence South 14° 02' East 602.38 feet to a point at Westerly edge of access road; thence South 11° 25' East 333.60 feet to a point at Westerly edge of access road; thence South 24° 28' East 249.00 feet to a point at Westerly edge of access road; thence south 30º 22' East 180.50 feet to a point at Westerly edge of access road and being in line with sale area Southerly boundary fence; thence South 60° 00' West along the fence line bearing a distance of 556.00 feet to a point in Easterly ditch line log transfer spur trackage; thence North 19° 40' West 520.00 feet to a point in Easterly ditch line log transfer spur track; thence North 21° 31' West 599. 00 feet to a point in Easterly ditch line log transfer spur track; thence North 16° 45' West 1500.00 feet to a point in Easterly ditch line log transfer spur track; thence North 08° 50' West 418.00 feet to a point in Easterly ditch line log transfer spur track; thence Northerly 150.00 feet, more or less, to a point in Easterly ditch line log transfer spur track, being the point of beginning, in Lane County, Oregon.

All that land described in the Deed from Rex Timber Inc., an Oregon corporation, to Bohemia Inc., an Oregon corporation, recorded January 24, 1984, Reception No. 84-02655, Official Records of Lane County, Oregon, lying within the following:

Commencing at the Southeast corner of the Donation Land Claim of Lorenzo Van Arburg No. 37, in Township 21 South, Range 1 West of the Willamette Meridian, Oregon; and running thence along the South line of said Claim to the Southwest corner thereof; thence North 20.20 chains, more or less, to the interior corner of said Claim, being the Northeast corner of Lot 3, Section 30, said Township and Range; thence West 242 feet, more or less, to the East side of the right of way of the Oregon and Southeastern

Railroad Company thence Northerly along the East line of said railroad right of way 544.9 feet to an iron pipe set in the ground; thence North 89° 30' East 1723 feet to the East line of said Donation Land Claim; thence South along the East line of said Donation Land Claim, 1770 feet to the place of beginning, in Lane County, Oregon.

3. In this declaration I will demonstrate, based on the evidence I have reviewed, that there is probable cause to believe, and I do believe that the **Defendant Currency** is money furnished or intended to be furnished by any person in exchange for a controlled substance, is proceeds traceable to such an exchange, and was used or intended to be used to facilitate furnished or intended to be furnished in exchange for a controlled substance in violation of 21 U.S.C. §§ 841, 846, and 856, and therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

4. I also will demonstrate, based on the evidence I have reviewed, that there is probable cause to believe, and I do believe that the **Defendant Real Property** is real property, which was used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of violations of 21 U.S.C. §§ 841, 846, and 856 and therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7).

5. The facts in this declaration come from my personal observations, my training and experience and information obtained from other agents, deputies, and officers. This declaration is for the limited purpose of establishing probable cause. Therefore, I have not set forth each fact learned during the investigation, but only those facts and circumstances necessary to establish probable cause.

### REAL PROPERTY ASSESSMENT REPORT

6. The Lane County property database, Regional Land Information Database (RLID) showed that N and J Investments purchased the property on April 19, 2023, for $138,000.

According to the Oregon Business Registry, N and J Investments LLC is a company owned by Joseph and Nicole Sclater who have an address of 1118 South 2nd Street in Cottage Grove, Oregon and a mailing address of 1498 East Main Street, Suite 103 in Cottage Grove, Oregon. The Business Registry for N and J Investments LLC is current until March 23, 2025.

## SUMMARY OF THE INVESTIGATION

7. In March 2024, Lane County Sheriff's Office (LCSO) Sergeant Marvin Combs attended a meeting with several local private timber companies. One of the security personnel at the meeting indicated to Sergeant Combs that based on the odor of marijuana he suspected there to be a large-scale marijuana growing operation at the **Defendant Real Property**.

8. In April 2024, Sergeant Combs and Detective Schenfeld drove to the **Defendant Real Property;** they both observed the property to be occupied and detected the odor of marijuana coming from the **Defendant Real Property**.

9. The property consists of a large 300-foot by 50-foot shop (indicated on the photo below as D). There is an old office-style building that has been converted into living quarters (in photo as A). There is also a newer built separate shower/bathroom/laundry room shed between the office and the shop (in photo as B). The property also contained a large open-fronted car port building (in photo as C).

/ / /

/ / /

/ / /

/ / /

/ / /



10. In April 2024, a 30-day surveillance UAS (drone warrant) was signed by Judge Love of the Lane County Circuit Court. During those flights and with subsequent vehicle surveillance, LCSO was able to view Joseph and Nicole Sclater occupying the **Defendant Real Property** and entering and exiting the suspected large marijuana grow building, the 300-foot by 50-foot shop.

11. In July 2024, Sergeant Combs emailed the Oregon Liquor and Cannabis Commission (OLCC) and the Oregon Medical Marijuana Program (OMMP) and learned the **Defendant Real Property** was not a registered marijuana grow site with either entity.

12. In April 2024, an Administrative Subpoena was sent to Lane Electric by the Drug Enforcement Administration (DEA) for the power records at the **Defendant Real Property**. The

records showed Joshua Auxilly was purchasing power starting in March 2020, and was listed as the subscriber for the power at the **Defendant Real Property**. Joshua Auxilly listed his address as the **Defendant Real Property**. Also listed on the power account with Lane Electric is Donald Sclater, who was later identified as Joseph Sclater's brother.

13. The power usage had a usage amount of 13,440 KWH in March 2020, and increased rapidly to as high as 179,000 KWH in July 2020, and again in February 2021 to 194,760 KWH. The usage remained consistently high since, averaging around 86,000 KWH per month. For perspective, based on my training and experience, the typical residence uses between 800 and 2,000 KWH per month.

14. The payments on the account were made with a credit card. The total amount paid for power purchased from Lane Electric for the **Defendant Real Property** from March 2020 to March 2024 was over $410,000 dollars, according to Lane Electric records.

15. On July 17, 2024, DEA and LCSO executed a State of Oregon search warrant at the **Defendant Real Property**. Officers seized and destroyed 3,285 growing marijuana plants and found the large 300-foot by 50-foot shop had been converted into a large indoor marijuana growing operation with four rooms operational.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /



16. Several more rooms were built out with "Grow Glide" tiered rack systems, that would have easily tripled the amount of marijuana plants growing when fully operational.



**Declaration of Sean Cummings** **Exhibit A Page 7**

17. During the execution of the warrant, officers contacted Joseph and Nicole Sclater and their two children, who were residing in the converted office building. Sergeant Combs interviewed Joseph Sclater, who admitted to buying the **Defendant Real Property** during COVID and turning it into a marijuana growing operation. He indicated that the marijuana growing operation at the **Defendant Real Property** had been his lifelong dream and that he had purchased the property for around $60,000.

18. Paperwork and information from the Regional Land Information Database (RLID) indicate the sales price was $138,000. Paper receipts seized during the warrant show that Joseph Sclater was renting the property from the previous owners for $10,000 per month before the purchase. Power bills were found in the residence, and Joseph Sclater admitted to paying the power bills. Joseph Sclater also admitted to Sergeant Combs and DEA Special Agent Sean Cummings that the approximately $20,000 found on the floor of his bedroom had come from the sale of marijuana grown at the **Defendant Real Property**.

19. Additionally, a total of $1,138,870.00 in United States Currency, was also located in the ceiling of the residential building. The $1,138,870.00 was stored in heat-sealed plastic bags and further contained in duffle bags in the ceiling of the residence occupied by Joseph Sclater and his family. When asked about the currency found in the ceiling, Joseph Sclater claimed no knowledge of that currency and stated the $1,138,870.00 did not belong to him or his wife and he had never seen the $1,138,870.00 before. Law enforcement found in the bedroom and the ceiling a combined total of $1,158,870.00 United States Currency, **Defendant Currency**.

20. Joseph Sclater admitted to selling marijuana to "local dispensaries" from the **Defendant Real Property**. Joseph Sclater repeatedly said "It's all me and it's all mine"

throughout the interview. Special Agent Sean Cummings also interviewed Nicole Sclater who said she did not know anything about the **Defendant Currency** located inside their residence at the **Defendant Real Property**. She said that the **Defendant Currency** did not belong to her or her husband and that she had never seen the **Defendant Currency** before.

21. A LCSO drug detection K-9 was deployed on the **Defendant Currency** and the K-9 indicated with a positive response to the presence of controlled substances on the currency and bags used to contain the currency.

## CONCLUSION

22. The evidence in this declaration provides probable cause to believe, and I do believe that **Defendant Currency** is money furnished or intended to be furnished by any person in exchange for a controlled substance, is proceeds traceable to such an exchange, and was used or intended to be used to facilitate furnished or intended to be furnished in exchange for a controlled substance in violation of 21 U.S.C. §§ 841, 846, and 856, and therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

23. I also believe that the **Defendant Real Property** is real property, which was used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of violations of 21 U.S.C. §§ 841, 846, and 856 and therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7).

///

///

///

///

24. I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 1746.

Executed this 1st day of October 2024.

s/ *Sean Cummings*
Sean Cummings
Special Agent
Drug Enforcement Administration